Robert O. Brink, J.
This is an action brought by Dorothy Brown, a widow, individually and as guardian ad litem for her children Robert Brown and Dennis Brown against Broome County, to recover damages on the claim that one of the coroners of Broome County performed an unauthorized and illegal autopsy on the body of her deceased husband. The case was tried in the County Court before the County Judge and a jury on March 9 and 10,1959 following which the jury returned a verdict in favor of the plaintiff for the sum of $3,500.
At the completion of plaintiff’s case and again at the close of the trial, the defendant’s counsel moved for a nonsuit and a dismissal of the complaint on the ground, that the plaintiff had failed to prove sufficient facts to constitute a cause of action. Following the verdict, the attorney for the defendant moved to set aside the verdict on the grounds, that the verdict was against the weight of evidence contrary to law and on the further ground, that the verdict was excessive. The court reserved generally on all motions so that counsel might have an opportunity to submit briefs and the court might have sufficient time to examine the issues of law involved.
This cause of action arose out of an incident which happened on the 10th day of February, 1958 when one Francis Brown, the deceased husband of the plaintiff Dorothy Brown, was found *909 dead in the Delaware and Hudson Railroad yards in the City of Binghamton, New York with his left hand partially severed. The deceased had been employed as a trainman by the Delaware and Hudson Railroad and had reported for work shortly before midnight. The train on which he was to work was being assembled in the yard and was scheduled to leave some time later in the early hours of the morning. The decedent’s body was found between two tracks in the railroad yards some time between 2:30 a.m. and 3:00 a.m. Dr. Vincent Maddi, one of the coroners of Broome County was summoned and when he arrived the body had already been removed to the yard office. The widow was notified of the accident by the police and when she learned that the coroner had directed an autopsy on the body, she protested to the police stating that she did not want an autopsy performed. The coroner testified on the examination before trial, that he did not recall whether before the autopsy be was advised as to the widow’s attitude, but that it would not have made any difference.
The autopsy findings showed: early acute myocardial infarction of left ventricle of the heart; together with coronary atherosclerosis, old myocardial infarction of left ventricle; extensive trauma to left hand, with loss of soft tissue and bones; and ecchymosis over left side of chest. The coroner filed a decision stating that death was due to natural causes.
The record shows, that there was no written request for an autopsy from duly constituted police authorities and further that no formal inquest was held involving the swearing and examining of witnesses. The principal issue of law involved in this case is the question whether under the circumstances the autopsy which the coroner, caused to be performed upon the body of the deceased was authorized and lawful under the statutes of the State of New York authorizing and permitting dissection of a body of a deceased person.
Under the common law, the body of a deceased person belongs to the nearest next of kin and no one had a right to mutilate or dissect a body without their permission. However, for the protection of society, it became necessary to authorize medical examiners to dissect bodies to determine the cause of death, particularly, in cases involving suspected crime and suicide. In most of the counties of this State, coroners are elected to act as medical examiners to investigate the cause of sudden deaths pursuant to authority vested in them by statute.
The statutes relating to the duties of coroners and their authority to dissect bodies should be examined together, because it is necessary to consider them in the aggregate in order to *910 interpret the statutory and legislative intent. The statutes to be considered are as follows:
County Law
“ § 662. General duties of coroner
“ 1. The coroner shall make inquiry into unnatural deaths within his county as prescribed by law. He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors.”
Code of Criminal Procedure
“ § 773. In what cases coroner to summon a jury.
Number of jurors to be summoned.
‘ ‘ Whenever a coroner is informed that a person has been killed or dangerously wounded by another, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, or has committed suicide, he must go to the place where the person is and forthwith inquire into the cause of the death, or wounding ”.
Public Health Law
“ § 4210. Cadavers; right to dissect
“ The right to dissect the body of a deceased person exists in the following cases:
1. In the cases prescribed by special statutes; or,
2. Whenever a coroner is authorized by law to hold an inquest upon a body, or upon the written request of the duly constituted police authorities of the state, including the department of correction, or of a political subdivision of the state with a population of more than one hundred thousand persons, or on behalf of the police authorities of a political subdivision of the state with a population of less than one hundred thousand by request of the state department of correction or state police, so far as such coroner authorizes dissection for the purposes of the inquest, or to furnish the information desired by said police authorities, and no further ”,
Pénal Law
“ § 2214. Unlawful dissection of the body of a human being
“ A person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor.”
*911 It should be observed in the first place that section 662 of the County Law charges the coroner with the duty of making inquiry into unnatural deaths. Section 773 of the Code of Criminal Procedure sets forth the conditions under which a coroner is authorized by law to hold an inquest upon a body. A close examination of this last section is of considerable interest and, particularly, the phrase, ‘ ‘ under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means or has committed suicide ” (italics supplied). In another section of the Code of Criminal Procedure, we find the expression, “ reasonable cause for believing” (§ 177, subds. 3, 4 relating to the arrest by a police officer on a felony); section 208 of the Code of Criminal Procedure, provides that a magistrate may commit a defendant, if there is sufficient cause to believe that the defendant is guilty of a commission of a felony. Black’s Law Dictionary defines the word “ suspect” as follows: “ [t]o have a slight or even vague idea concerning; — not necessarily involving knowledge or belief or likelihood.” In other words, a coroner is authorized to hold an inquest, if there is even a slight possibility that the death of the decedent resulted from either crime or suicide.
Section 4210 of the Public Health Law (subd. 2) authorizes a coroner to dissect a body whenever a coroner is authorized by law to hold an inquest upon a body. It should be noted that'this statute does not provide, whenever a coroner holds an inquest upon a body, but rather ‘1 when a coroner is authorised by law to hold an inquest upon a body ” (italics supplied). The attorney for the plaintiff argues that a coroner does not have the right to dissect a body under this provision of the statute unless he actually holds a formal inquest. To this court, it seems such an argument is unsound. It would seem ridiculous that a coroner should be required to swear witnesses and take proof before he first ascertained that the decedent died from unnatural causes and the cause of the traumatic death. To act otherwise, would cause unnecessary inconvenience and waste of time, not only for the coroner, but also for the witnesses who would necessarily be subpoenaed. A more reasonable interpretation of the intention of the statutes would be to say, that under any circumstances where a coroner suspects that a crime or a suicide is involved, he has the right to perform an autopsy as a preliminary part of an inquest, so that he may determine whether further investigation is necessary.
In order not to interfere with burial plans and also for scientific reasons, post-mortem examinations of bodies should be *912 conducted promptly after death. They should not be delayed pending other types of investigations.
With this construction of the statute, the only remaining question is whether under the facts and circumstances present in this case, the coroner was justified in suspecting that a crime might have been committed, or the decedent may have died as a result of suicide. The plaintiff’s husband was found dead under unusual circumstances. He was lying between two railroad tracks with a portion of his hand severed. Before the coroner arrived, the body had been moved. No one saw the decedent die or knew how he died.
Under all the circumstances of this case, it is the opinion of this court, that as a matter of law, the coroner was justified in suspecting violence. To hold otherwise, in the opinion of this court, would be dogmatic and arbitrary interference with the functions of a medical examiner. Unfortunately, the dissection of a human body often adds to the sorrow and anxiety of the next of kin. However, in our modern society with the ever increasing numbers of traumatic deaths, it seems most important that our courts should give the statutes involved, a broad and liberal construction.
Defendant’s motion for nonsuit should be granted and plaintiff’s complaint dismissed upon the merits.
Order may be submitted and judgment entered accordingly.